IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Wayne Allen Day,                                :
                         Plaintiff              :      Civil Action 2:12-cv-00772

           v.                                   :      Judge Watson

Carolyn W. Colvin,                              :      Magistrate Judge Abel
Commissioner of Social Security,
                         Defendant              :

## REPORT AND RECOMMENDATION

Plaintiff  brings this action under 42 U.S.C. §§405(g) for review of a final decision of the Commissioner of Social Security denying his  application for Disability Insurance benefits and Supplemental Security Income benefits.  This matter is before the  Magistrate Judge for a report and recommendation on the parties' cross-motions for summary judgment.

**Summary of Issues.** Plaintiff Wayne Allen Day maintains that he became  disabled, at age 47, by the residuals of a stroke and by his heart condition. The administrative law judge concluded that plaintiff retained the residual functional capacity to perform a reduced range of sedentary work. Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because the administrative law judge failed to consider whether plaintiff  met or equaled Listing 4.02.

**Procedural History.**  Plaintiff Wayne Allen Day filed his application  for disability insurance benefits on October 27, 2008, alleging that he became disabled on August 27, 2008, at age 47, by a stroke and heart condition.  (R. 150, 194.)  The applica-

tion was denied initially and upon reconsideration. Plaintiff sought a *de novo* hearing before an administrative law judge. On October 4, 2010, an administrative law judge held a hearing at which plaintiff, represented by counsel, appeared and testified. (R. 26.) A vocational expert also testified. On December 22, 2010, the administrative law judge issued a decision finding that Day was not disabled within the meaning of the Act. (R. 20.) On June 28, 2012, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security. (R. 1-3.)

**Age, Education, and Work Experience.** Wayne Allen Day was born April 4, 1961. (R. 190.) He completed the 10th grade. (R. 200.) He has worked as an apartment painter and a fork lift operator. He last worked August 27, 2008. (R. 194.)

**Plaintiff's Testimony.** Plaintiff testified that he put on about 70 pounds after he stopped smoking. Although Day had a driver's license, his father drove him to the hearing because he does not have a car and he did not know how to get there. He completed the tenth grade.

Day testified that he last worked in 2008 as a forklift operator loading and unloading trucks. He quit that job because he was not being paid enough. Prior to driving as forklift, plaintiff worked as a painter although he did not earn much money.

Day testified that he could not do very much of anything. He sat around a lot and did a little a housework every now and then. He could sweep, dust, and wash dishes. He lived in a two story condo, and he climbed about 20 steps to reach his bed-

2

room. He usually had to stop at least once when walking up the stairs to catch his breath. He lived with his father. His father did the cooking and grocery shopping, although Day helped him carry in the bags of groceries. He believed that the bags weighed no more than 5 or 10 pounds. During the day, he watched television. Every now and then, his father would take him out to see friends. He reported becoming fatigued when washing dishes or getting the mail. He usually required about 20 minutes of sitting to recover from fatigue. He experienced shortness of breath.

Day testified that he had difficulty with his memory following his stroke. His heart condition caused shortness of breath, weakness, and fatigue. He had pain in his legs that felt likes needles shooting down them three to four times per day.

Although he could follow his favorite television show and talk about it later, he could not comprehend what he read. Since having a stroke, he could no longer read a recipe and follow it.

Day testified that he had problems sleeping because of pain in his back and legs and headaches. He took aspirin for his headaches.

Day has been told that he cannot lift more than 15 pounds. He did not go on walks or engage in exercise despite being told by his doctors that he should. He no longer drank alcohol. He napped 4 or 5 days a week. He did not have any difficulty taking care of himself as far as showering, shaving, or washing his hair. He did not have any hobbies. He had difficulty balancing and sitting for a couple hours at a time. (R. 32-52.)

**Medical Evidence of Record.**  This Report and Recommendation will only summarize the evidence related to Day's cardiac condition.

In March 1998, plaintiff suffered an inferior myocardial infarction and underwent coronary angiography and stenting of the right coronary artery. (R. 323-341.) A June 14, 1999 echocardiography documented an ejection fraction estimated at 45%. (R. 279, 292.) In November 2007, Day suffered a myocardial infarction, and a stent was placed in the circumflex artery due to a 90% obstructive lesion. (R. 295-96.) On November 6, 2007, cardiac catheterization revealed a dilated left ventricle with global hypokinesis and inferior akinesis. His ejection fraction was 20%. There were significant lesions in three coronary arteries. Plaintiff was diagnosed with diffuse triple vessel coronary disease and severe global systolic left ventricular dysfunction consistent with hypertensive cardiomyopathy. (R. 304.)

On September 5, 2008, plaintiff suffered a cerebral vascular accident and sustained a right frontal lobe infarct. An echocardiogram showed a left ventricular ejection fraction of 30% and a carotid duplex study revealed that the right carotid was 60-70% occluded and that the left carotid was 100% occluded. (R. 374-75.)

Gerald Klyop, M.D. On February 27, 2009, Dr. Klyop, a State agency reviewing physician, completed a physical residual functional capacity assessment. Dr. Klyop opined that plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. Day could stand and/or walk about 6 hours in an 8-hour day. He could sit with normal breaks about 6 hours in an 8-hour day. He was unlimited in

4

his ability to push and/or pull.  Plaintiff could occasionally climb ramps or stairs and crawl. He could never climb ladders, ropes, or scaffolds.

Dr. Klyop concluded that plaintiff's allegations were not supported by the objective evidence. Plaintiff alleged that he had no endurance, poor balance, fatigue when walking, and difficulty lifting or carrying heavy items. His activities of daily living included walking to mailbox. He did not have trouble walking while shopping, although he had trouble walking up a flight of stairs. He did not have trouble lifting or carrying things during the day. He could lift a gallon of milk and basket of laundry. Dr. Klyop concluded that his activities of daily living were not inconsistent with light work and that his allegations were only partially credible. (R. 480-88.)

On June 5, 2009, W. Jerry McCloud, M.D., adopted the February 27, 2009 assessment. (R. 489.)

On April 24, 2009, during adenosine cardiolite stress testing, plaintiff had a significant drop in his systolic blood pressure. (R. 516.) A May 27, 2009 report showed an ejection fraction of 23%. (R. 510,)  On May 27, 2009, catheterization revealed an ejection fraction of 25% and significant lesions in multiple coronary arteries. (R. 515.)

On June 10, 2009, plaintiff underwent bypass grafting surgery on four coronary arteries.(R. 501.) A September 11, 2009 echocardiography documented a moderately enlarged left ventricle, global and segmental systolic dysfunction, and a left ventricular ejection fraction of 25%.

On October 12, 2009, a cardioverter-defibrillator was implanted. (R. 500.) Plaintiff was diagnosed with severe ischemic cardiomyopathy with ejection fraction of 25%, status post bypass surgery and multiple coronary interventions, and Class II heart failure.  (R. 491-93.)

**Administrative Law Judge's Findings.**

1.  The claimant meets the insured status requirements of the Social Security Act through June 30, 2010.

2.  The claimant has not engaged in substantial gainful activity since August 27, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.  The claimant has the following severe impairments: coronary artery disease, hypertension, borderline intellectual functioning, residuals secondary to myocardial infarctions, and residuals secondary to a stroke (20 CFR 303.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P. Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift up to 10 pounds occasionally, stand and/or walk for up to 2 hours in an 8-hour workday, and sit for up to 6 hours in an 8-hour workday, with normal breaks. He can occasionally climb ramps or stairs, and should not climb ladders, ropes, or scaffolds. He should avoid concentrated exposure to extremes of cold or heat, and avoid occupational exposure to unprotected heights and moving and/or hazardous machinery. He can interact appropriately with others, deal with changes in the workplace, and perform simple 1 to 3 step tasks that are not fast-paced.

6.  The claimant is unable to perform any past relevant work (20 CFR 4041.1565 and 416.965).

6

7.      The claimant was born on April 4, 1961 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.      The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from August 27, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(R. 13-20.)

**Standard of Review**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'"  *Id*.  *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366

(6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'"  *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.**  Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because the administrative law judge erred when she failed to consider whether plaintiff met or equaled Listing 4.02. Although the administrative law judge considered whether plaintiff met or equaled Listings 4.04 (ischemic heart disease), 12.02 (organic mental disorders), and 12.05 (mental retardation), she failed to consider Listing 4.02 (chronic heart failure).

Plaintiff argues that the evidence of record demonstrates that plaintiff meets Listing 4.02 based on his persistently decreased left ventricular ejection fraction of 30% or less on repeated evaluation, his hypotensive response during an adenosine cardiolite stress test, and his persistent symptoms that seriously limit his functional abilities. In the alternative, plaintiff argues that if he doesn't meet the Listing, it is medically equaled based on his ischemic heart disease and carotid stenosis. Plaintiff argues that the administrative law judge failed to consider his heart failure and left ventricular dysfunction and its impact in combination with his other impairments. The decision of the administrative law judge fails to reference plaintiff's numerous low ejection fractions.

Plaintiff contends that Social Securing Ruling ("SSR") 96-6p requires that the judgment of a physician designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge must be received into the record as expert opinion evidence and given appropriate weight. Plaintiff maintains that the administrative law judge is obligated to obtain an updated medical opinion when additional medical evidence is received that might change the State agency physician's previous finding that no Listing was equaled. At the time the State agency physicians offered their opinions, they did not have access to any medical evidence from 2009, which included the April 2009 adenosine cardiolite stress test, the May 2009 catheterization documenting an ejection fraction of 25%, the June 2009 coronary bypass surgery, the September 2009 echocardiography with an ejection fraction of 25%, and the October 2009 implantation of the cardioverter-defibrillator.

Plaintiff further argues that the administrative law judge's failure to call a medical expert to determine equivalence is not supported by substantial evidence. Plaintiff maintains that the administrative law judge did not offer any explanation for not calling a medical expert, failed to indicate any reliance on the State agency medical consultant's prior evaluations, and failed to even mention plaintiff's chronic heart failure. As a result, plaintiff contends that remand is required to obtain testimony from a medical expert regarding equivalency to a listed impairment.

**Analysis.** Failure to Obtain Medical Expert. Listing 4.02A states:

Chronic heart failure while on a regimen of prescribed treatment, with symptoms and signs described in 4.00D2. The required level of severity for this impairment is met when the requirements in both A and B are satisfied.

A. Medically documented presence of one of the following:

1. Systolic failure (see 4.00D1a(I)), with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure); or

2. Diastolic failure (see 4.00D1a(ii)), with left ventricular posterior wall plus septal thickness totaling 2.5 cm or greater on imaging, with an enlarged left atrium greater than or equal to 4.5 cm, with normal or elevated ejection fraction during a period of stability (not during an episode of acute heart failure);

AND

B. Resulting in one of the following:

1. Persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual; or

2. Three or more separate episodes of acute congestive heart failure within a consecutive 12–month period (see 4.00A3e), with evidence of fluid retention (see 4.00D2b(ii)) from clinical and imaging assessments at the time of the episodes, requiring acute extended physician intervention such as hospitalization or emergency room treatment for 12 hours or more, separated by periods of stabilization (see 4.00D4c); or

3. Inability to perform on an exercise tolerance test at a workload equivalent to 5 METs or less due to:

a. Dyspnea, fatigue, palpitations, or chest discomfort; or

b. Three or more consecutive premature ventricular contractions (ventricular tachycardia), or increasing frequency of ventricular ectopy with at least 6 premature ventricular contractions per minute; or

c. Decrease of 10 mm Hg or more in systolic pressure below the baseline systolic blood pressure or the preceding systolic pressure measured during exercise (see 4.00D4d) due to left ventricular dysfunction, despite an increase in workload; or

d. Signs attributable to inadequate cerebral perfusion, such as ataxic gait or mental confusion.

20 CFR Pt. 404, Subpt. P, App. 1.

Defendant argues that plaintiff has failed to demonstrate that he meets the criteria for Listing 4.02B. Although the record demonstrate that plaintiff has an ejection fraction of 30% or less, the Listing requires that the ejection fraction must be during a period of stability, not during an episode of acute heart failure. Defendant argues that the ejection fractions plaintiff cites in support of his position all occurred when he was hospitalized for cardiac procedures. As a result, defendant maintains that these low ejection fractions did not occur during a period of stability as required by the Listing. Defendant also argues that plaintiff fails to meet the requirements under section B of the Listing.

The primary function of a medical expert is to explain medical terms and the findings in medical reports in more complex cases in terms that the administrative law judge, a who is not a medical professional, may understand.  *See, Richardson v. Perales,* 402 U.S. 389, 408 (1972).  The Commissioner's regulations provide that an administrative law judge "may also ask for and consider opinions from medical experts on the

nature and severity of [the claimant's] impairment(s) and on whether [the] impairment(s) equals the requirements of any impairment listed in appendix 1 to this subpart." 20 C.F.R. § 404,1527(f)(2)(iii). The Commissioner's operations manual indicates that it is within the administrative law judge's discretion whether to seek the assistance of a medical expert. HALLEX I-2-5-32 (September 28, 2005). "The primary reason an ALJ may obtain ME opinion is to gain information which will help him or her evaluate the medical evidence in a case, and determine whether the claimant is disabled or blind." *Id.* The operations manual indicates that an administrative law judge "may need to obtain an ME's opinion" in the following circumstances:

- the ALJ is determining whether a claimant's impairment(s) meets a listed impairment(s);
- the ALJ is determining the usual dosage and effect of drugs and other forms of therapy;
- the ALJ is assessing a claimant's failure to follow prescribed treatment;
- the ALJ is determining the degree of severity of a claimant's physical or mental impairment;
- the ALJ has reasonable doubt about the adequacy of the medical record in a case, and believes that an ME may be able to suggest additional relevant evidence;
- the medical evidence is conflicting or confusing, and the ALJ believes an ME may be able to clarify and explain the evidence or help resolve a conflict;
- the significance of clinical or laboratory findings in the record is not clear, and the ALJ believes an ME may be able to explain the findings and assist the ALJ in assessing their clinical significance;
- the ALJ is determining the claimant's residual functional capacity, *e.g.*, the ALJ may ask the ME to explain or clarify the claimant's functional limitations and abilities as established by the medical evidence of record;
- the ALJ has a question about the etiology or course of a disease and how it may affect the claimant's ability to engage in work activities at pertinent points in time, *e.g.*, the ALJ may ask the ME to explain the

> nature of an impairment and identify any medically contraindicated activities; or
> - the ALJ desires expert medical opinion regarding the onset of an impairment.

HALLEX I-2-5-34 (September 28, 2005).  An administrative law judge's determination of whether a medical expert is necessary is inherently a discretionary decision.  *Nebra A. Simpson v. Commissioner of Social Security*, 2009 WL 2628355 (6th Cir. August 27, 2009) (unreported) at *8. An administrative law judge abuses her discretion only when the testimony of a medical expert is "required for the discharge of the ALJ's duty to conduct a full inquiry into the claimant's allegations.  *See* 20 C.F.R. § 416.1444."  *Haywood v. Sullivan*, 888 F.2d 1463, 1467-68 (5th Cir. 1989).

Plaintiff's ejection fraction results were obtained either shortly after a cardiac event or within three months of a cardiac event, but there is no medical opinion evidence about whether the ejection fractions were obtained when plaintiff was medically stable. Generally, Day sought medical treatment only when his cardiac symptoms were leading up to a cardiac event.  Further, the State agency physicians, Drs. Klyop and McCloud, did not have the benefit of reviewing treatment records from 2009, including an April 2009 catheterization, June 2009 four-artery coronary bypass surgery, a September 2009 echocardiogram finding of a 25% ejection fraction of the left centrical, and an October 2009 cardioverter defibrilator implant following a diagnosis of severe ischemic cardiomyopathy with an ejection fraction of 25%. Although the administrative law judge purports to rely on the opinions of Drs. Klyop and McCloud, he acknowledges

13

that their "conclusions with respect to a few of the claimant's physical capabilities (e.g. what he can comfortably lift) exceed what the record indicates." (R. 18.) The administrative law judge makes clear that he does not adopt the opinions of Drs. Klyop and McCloud, but he does not state whose opinion upon which he does rely. Because the administrative law judge failed to consider whether plaintiff met or equaled List 4.02 and did not identify the basis for finding that plaintiff retained the capacity for a reduced range of sedentary work, I recommend that this case be REMANDED. On remand, the administrative law judge should consult a medical expert to assist in evaluating the medical evidence regarding Day's cardiac  impairment and formulating his residual functional capacity.

From a review of the record as a whole, I **RECOMMEND** that this case be **REMANDED.** On remand, the administrative law judge should consult a medical expert to assist in evaluating the medical evidence regarding Day's cardiac  impairment and formulating his residual functional capacity.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District

Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).


         s/Mark R.  Abel        
United States Magistrate Judge